**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel Wilke,<br><br>    Plaintiff,<br><br>v.<br><br>Transportation Insurance Company,<br><br>    Defendant. | No. CV-16-04055-PHX-JJT<br><br>**ORDER** |

At issue is the admissibility of expert testimony provided by Dr. Anthony Yeung on behalf of Plaintiff Samuel Wilke. The Court considers Defendant's Rule 702/*Daubert* Motion to Preclude Dr. Yeung's Expert Opinions (Doc. 129, Mot.), Plaintiff's Response (Doc. 137, Resp.), and Defendant's Reply (Doc. 139, Reply). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.　BACKGROUND**

    **A.　Brief Summary of Facts**

Plaintiff suffered a spine injury while at work on June 24, 2015 (Doc. 1, Ex. A, Compl. ¶ 7.) Defendant, the workers' compensation insurance provider for Plaintiff's employer, approved Plaintiff for workers' compensation benefits. (Compl. ¶ 15.) Plaintiff had two spine surgeries for herniated discs—the first was on March 18, 2016, and the second was on June 16, 2016. (Doc. 87, Plaintiff's Additional Facts Deemed Material (PSOF) ¶¶ 43, 64.) After each surgery, Plaintiff was prescribed three medications—oxycodone, docusate sodium, and diazepam—which he was supposed to fill immediately.

(PSOF ¶¶ 44-45, 66.) Both times, Plaintiff was unable to fill his prescriptions for docusate sodium and diazepam immediately because Defendant initially denied coverage. (Doc. 128, Defendant's Separate Statement of Facts (DSOF), ¶ 3-4, 10, 16; PASOF ¶¶ 45, 66.) Plaintiff alleges that Defendant's delay in approving his medications after each surgery caused his spine to re-herniate both times. (Compl. ¶¶ 21, 27.) Plaintiff's sole claim is that Defendant breached its duty of good faith and fair dealing when it delayed approval of the prescriptions, thereby causing his re-herniations. (Compl. ¶¶ 42-46.)

### B. Expert Witness Dr. Anthony T. Yeung

Anthony T. Yeung, M.D., a board-certified orthopedic surgeon, wrote two reports for Plaintiff. For his initial report (Doc. 129, Ex. 3, Yeung Report), dated in March 2018, Dr. Yeung relied on records from this litigation and medical records from Plaintiff's treating surgeon, Dr. Lyle Young.[1] The Yeung Report concluded that Plaintiff "was a risk patient for recurrent herniation . . . because of the size of his initial herniation causing a defect in the annulus that would make recurrence higher than average to approximately 20-25% incidence." (Yeung Report at 57.) Since Plaintiff was a risk patient, the Yeung Report opined that "the post-op regimen of prescription meds [was] even more important." (Yeung Report at 57.) The Yeung Report noted that Plaintiff had a re-herniation in March 2016 and a second re-herniation in June 2016. (Yeung Report at 57.) It opined that Defendant's delay in approving the prescription coverage was "more likely than not a major contribution to the already-high incidence of recurrent herniation which occurred after both the March and June, 2016 surgeries." (Yeung Report at 58.)

Dr. Yeung wrote a second report in August 2018 to rebut the opinions of Defendant's expert witnesses'—Dr John M. Trang, a pharmacologist, and Dr. Paul R. Gause, an orthopedic surgeon. (Doc. 129, Ex. 4, Yeung Rebuttal.) Before writing his rebuttal report, Dr. Yeung reviewed his initial report, new medical records, and new expert

---

[1] Dr. Yeung's report stated that his review included "plaintiff's initial disclosure statement, defendant's disclosure statement, records of Dr. Lyle Young at Sonoran Spine, the Plaintiff's fifth supplemental disclosure, additional records from Dr. Lyle Young, transcript of the deposition of Lyle Christopher Young, MD and transcript of the deposition of Samuel Wilke [and] Dr. Young's post-op regimen." (Yeung Report at 57.)

- 2 -

witness opinions and reports.[2] The Yeung Rebuttal agreed with Dr. Lyle Young's treatment and recommendations. (Yeung Rebuttal at 99.) It stated that Dr. John Trang's opinion—that the pharmacologic effects of decussate sodium require 12-16 hours after ingestion to take maximum effect—"does not excuse the denial of recommended post op treatment [because] Dr. Lyle Young is[] responsible [for] treat[ing] his surgical patient without second guessing by the insurance carrier []or other professionals[.]" (Yeung Rebuttal at 99.) The Yeung Rebuttal stated that expert witness Dr. Paul Gause's opinion "was not critical of Dr. Young's care, but is intended to provide a defense opinion from a spine surgeon to support [Defendant] and the manner in which they intervened in [P]laintiff's surgical and post-op care[.]" (Yeung Rebuttal at 100.) The Yeung Rebuttal opined that "[i]nsurance companies should not dictate medical and surgical care inappropriately as medical care will always be an art based on science." (Yeung Rebuttal at 100.)

## II.  LEGAL STANDARD

Under Rule 702, an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The trial judge acts as the "gatekeeper" of expert witness testimony by engaging in a two-part analysis. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 592 (1993). First, the trial judge must determine that the proposed expert witness testimony is based on scientific, technical, or other specialized knowledge. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Second, the trial court must ensure that the proposed testimony is relevant—that it "will assist the trier of fact to understand or determine a fact in issue." *Id.* "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401.

---

[2] Dr. Yeung's report stated that his review included: Dr. Lyle Young's treatment records and deposition; Dr. John Trang's opinions, expert report, published materials, and fee schedule; and Dr. Paul Gause's expert opinion and report. (Yeung Rebuttal at 99.)

"The inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted).

## II. ANALYSIS

Defendant argues that the proposed testimony of Dr. Yeung is neither reliable nor relevant. (Mot. at 1.) Plaintiff asserts that Dr. Yeung is qualified to testify about medical issues and that his testimony is relevant to the issue of medical causation. (Resp. at 7.)

### A. Dr. Yeung is Qualified to Opine about Medical Causation but not the Reasonableness of Insurance Business Practices

Defendant first argues that Dr. Yeung is "not qualified to opine whether Defendant acted reasonably in temporarily denying coverage for Plaintiff's muscle relaxant prescription." (Mot. at 6.) Plaintiff's counterargument is that Dr. Yeung "should be entitled to criticize any non-medical person who is making medical decisions." (Resp. at 10.) However, Plaintiff does not offer Dr. Yeung's report as evidence of whether Defendant acted reasonably in temporarily denying Plaintiff's prescription. Instead, Plaintiff uses Dr. Yeung's opinion—that Plaintiff's delayed access to medication following his two surgeries contributed to his re-herniations—to rebut Defendant's evidence about medical causation. To any extent that Dr. Yeung opines about the reasonableness of Defendant's actions, the testimony will not be allowed. Dr. Yeung is an expert in the practice of medicine, not the business practices of insurance companies.

Defendant next argues that Dr. Yeung—an orthopedic surgeon—"lacks expertise in the realm of pharmacology, and has no basis for challenging Dr. Trang's opinions on the subject." (Mot. at 6.) Plaintiff asserts that "a medical doctor has sufficient foundation to

testify on any medical point as they are granted license to practice in any specialty once they are licensed in Arizona." (Resp. at 7.) "Experience in conjunction with other knowledge, skill, training or education" may provide a sufficient foundation for expert testimony. Fed. R. Evid. 702, cmt. to 2000 Amendment. "[D]octors with unlimited licenses are competent to give expert testimony in the entire medical field[.]" *Chalupa v. Indust. Commission*, 509 P.2d 610, 611 (Ariz. 1973). Dr. Yeung's combination of education, training, and experience make him qualified to testify about medical causation. To become an orthopedic surgeon, Dr. Yeung completed medical school, a one-year residency in general surgery, and a three-year residency in orthopedic surgery. (Doc. 129, Ex. 3, Yeung CV at 59.) Dr. Yeung has been a practicing orthopedic surgeon for over thirty years, and he specializes in spine care. (Yeung CV at 59.) Defendant's contention that Dr. Yeung is not qualified to testify about the effects of medication because he "does not routinely prescribe any medications" lacks merit. (Mot. at 3.) Dr. Yeung, like all physicians, is licensed to prescribe medication and possesses specialized knowledge about medications' effects. As an experienced spine surgeon, he is qualified to testify about medical causation in this case.

### B. Dr. Yeung's Testimony Is Supported by Sufficient Facts and Data

Defendant also contends that Dr. Yeung's reports are "conclusory and not supported by sufficient facts or data" and that "Dr. Yeung did not specify which drug contributed to which re-herniation, or how." (Mot. at 4.) Plaintiff argues that "[b]ecause Dr. Yeung can testify that muscle spasms are a cause of post-surgery re-herniation and a muscle relaxer can minimize spasms, the lack of muscle relaxers can significantly increase the risk of re-herniation." (Resp. at 9.) The term "data" in Rule 702 is intended to encompass the reliable opinions of other experts. Fed. R. Evid. 702, cmt. to 2000 Amendment. Dr. Yeung conducted an extensive review of materials—including Dr. Lyle Young's treatment records, Dr. Lyle Young's deposition transcript, Plaintiff's deposition transcript, disclosure statements, and the reports of Dr. Paul Gause and Dr. John Trang. This is sufficient "data" to meet the Rule 702 standard. Defendant may use "cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof" to attack the opinions in the Yeung Report and Yeung Rebuttal. *Daubert*, 509 U.S. at 595 (citation omitted).

### C. Dr. Yeung's Testimony is Relevant to Medical Causation

Rule 702's relevance standard requires a valid scientific connection to the pertinent inquiry. *Daubert*, 509 U.S. at 1320. Here, the pertinent inquiry is causation. In assessing whether the Yeung Report and Yeung Rebuttal "will assist the trier of fact" in resolving this issue, we must look to the governing substantive standard—Arizona law regarding an insurer's duty of good faith and fair dealing.

The tort of bad faith arises when the insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). Bad faith plaintiffs must provide evidence that their losses were "caused by defendant's conduct." *Rawlings v. Apodaca*, 726 P.2d 565, 577 (Ariz. 1986). The Yeung Report will help the trier of fact to determine medical causation because it provides an opinion about whether Plaintiff's delayed access to prescribed medication caused his re-herniation. The Yeung Rebuttal will also help the trier of fact to the extent that it opines about medical causation. As explained above, statements in the Yeung Rebuttal that relate only to the reasonableness of Defendant's conduct will not be allowed.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's Rule 702/*Daubert* Motion to Preclude Dr. Yeung's Expert Opinions (Doc. 129).

Dated this 26th day of June, 2019.

Honorable John J. Tuchi
United States District Judge